IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
    vs.                            )          CRIMINAL NO. 04cr00370JC
                                   )
DANIEL PADILLA,                    )
                                   )
          Defendant.               )

**UNITED STATES' RESPONSE TO DEFENDANT'S
OBJECTIONS TO PRESENTENCE REPORT**

COMES NOW the United States of America, by and through David C. Iglesias, United States Attorney for the District of New Mexico, and Marron Lee, Assistant United States Attorney for said District, and files a response to Defendant's sentencing objections filed July 12, 2004, as follows:     I

**I.      The Defendant's objections to the Presentence Investigation Report (PSR) is untimely under Federal Rules of Criminal Procedure Rule 32.**

On April 26, 2004, the PSR was disclosed to the Defendant and the United States in accordance with the rules.  This matter was set for sentencing on June 16, 2004.  On June 14, 2004,  the Defendant filed an opposed motion to continue the sentencing based on his inability to "prepare the necessary memorandum for submission to the Court" prior to the sentencing date of June16, 2004.

Although the Defendant stated he would not make any objections to the PSR, he requested an additional thirty (30) days to investigate statements made about his involvement with a prison gang.  On June 15, 2004, the Court granted the Defendant's

motion and immediately reset the matter for sentencing on July 14, 2004.  On July 12, 2004, the Defendant filed another opposed motion to continue the sentencing and his objections to the PSR.  The motion to continue is alleged to allow time for the United States and the Probation to respond to his untimely objections.

Federal Rules of Criminal Procedure clearly set forth deadlines for objections and responses to PSR.  This Rule is clearly indicated on the cover sheet of each PSR that outlines the District Court's general order that within fourteen (14) days of receiving the PSR counsel must make their objections known.  The Defendant had the PSR in his possession for over seventy-seven (77) days prior to filing his objections.

## II.    The Defendant agreed that he would be sentenced using the sentencing guidelines.

The plea agreement that the Defendant knowingly and voluntarily entered into on March 10, 2004, expressly states that the sentencing guidelines are applicable in this case (page 2, ¶ 5).  By signing the document, the Defendant agreed that pursuant to the Sentencing Reform Act of 1984,  the sentencing guidelines applied.  Although *Blakely* had yet to be decided by the Supreme Court at the time of the plea, the case was clearly pending.  At no time did the Defendant express concern about the Constitutionality of the sentencing guidelines, or state that he did not believe they applied in this case.  Rather, the Defendant is attempting to ignore an express agreement between the parties by attempting to apply a new decision that does not apply to a Federal sentence.

**III**    ***Blakely*'s requirement of proof beyond a reasonable doubt to a jury does not apply to this Defendant's enhancements which are based upon prior criminal convictions**.

As will be discussed more thoroughly below, the *Blakely* decision does not invalidate the United States Sentencing Guidelines.  Moreover, even if this Court were to find that *Blakely* applies to the Sentencing Guidelines in general, it does not apply to the facts of this case.  The Defendant's objection to sentencing range as calculated in the PSR is only to the increase as a result of his prior criminal convictions.  The Defendant does not object to the other sentencing enhancements that were applied in his case.  Sentence enhancements based upon prior criminal convictions are explicitly excepted from the jury requirement of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely*.

The Tenth Circuit recently held that where facts that increase sentence are facts of prior conviction, *Blakely* does not require proof to jury.  *Blakely* was based on rule announced in *Apprendi*, that specifically carved out recidivism issue by requiring that facts "other than the fact of a prior conviction" be proven to jury.  *United States v. Cooper*, 2004 WL 1598798 (10th Cir. Jul. 19, 2004).

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant was convicted of reentry of deported alien.  He was sentenced in accordance with the Sentencing Guidelines and received the 16-level increase in offense level due to his prior conviction for an aggravated felony.  *Id.* at 227.  The indictment failed to allege the aggravated felony.  *Id.*  The Supreme Court squarely rejected the arguments that the indictment must allege the prior conviction or that the prior conviction must be proven

beyond a reasonable doubt.  *Id.* at 239.  In *Apprendi*, 530 U.S. 466 (2000), the Court

expressly declined to overrule *Almendarez-Torres*. *Id.* at 489-90.  The Court in *Blakely*

reiterated the rule from *Apprendi* that "[o]ther than the fact of a prior conviction, any fact

that increases the penalty for a crime beyond the prescribed statutory maximum must

be submitted to a jury, and proved beyond a reasonable doubt."  *Blakely*, 2004 WL

1402697 at *4 (citing *Apprendi*, 530 U.S. at 490 (2000).

Although this Defendant has not pled guilty to a reentry as a deported alien, the

Court is looking to whether to apply an enhancement to a career offender.  Although not

identical, the issues are indistinguishable.  In other words, for an enhancement to apply

in an immigration case, the Court has to determine that the prior conviction was an

aggravated felony or a crime of violence, etc., just as it does when looking to the career

offender enhancement.  As *Blakely*, has carved out an exception to prior convictions,

the offense level should be increased due only to the two prior convictions.

## IV    *BLAKELY* DOES NOT INVALIDATE THE FEDERAL SENTENCING GUIDELINES

### A.    This Court is Bound by Supreme Court and Circuit Court Precedent Upholding the Guidelines.

In *Blakely*, 2004 WL 1402697 (June 24, 2004), the Supreme Court applied the

rule of *Apprendi*, 530 U.S. 466, 490 (2000), to invalidate a sentencing enhancement,

imposed pursuant to state law, that increased the sentence beyond the range

authorized by Washington state's statutory sentencing guidelines regime.  The Court

explained that, because the facts supporting the enhancement were "neither admitted

by [the defendant] nor found by a jury," the sentence violated the Sixth Amendment right to trial by jury.  2004 WL 1402697 at \*4.

*Blakely* did not invalidate the federal sentencing Guidelines, nor did it hold that its rule applies to the Guidelines.  *See* 2004 WL 142697 at \*6 n.9 ("[t]he Federal Guidelines are not before us, and we express no opinion on them"); *see also Apprendi*, 530 U.S. at 497 n.21 (same), *see also United States v. Pineiro*, 2004 WL 1543170 (5th Cir., July 12, 2004) (holding  that after considering the *Blakely* decision, prior Supreme Court cases, and fifth circuit precedent, that *Blakely* does not extend to the federal Guidelines and that the sentence did not violate the Constitution); *see also United States v. Booker*, 2004 WL1535858 (7th Cir., July 9, 2004) (holding that *Blakely* does apply to the enhancements under the Federal Guidelines).

In *Apprendi*, the Court expressed no view on the Guidelines beyond "what this Court has already held."  *Id*. (citing *Edwards v. United States*, 523 U.S. 511, 515 (1998)).  What the Court has "already held" about the Guidelines therefore continues to provide the governing principle for this court -– and Supreme Court rulings have consistently upheld the Guidelines against constitutional attack and underscored their unique status within our constitutional scheme.  *See, e.g., Mistretta v. United States*, 488 U.S. 361 (1989).  Indeed, the Court has found that so long as a sentence does not exceed the statutory maximums established by Congress for the offense of conviction, a Guidelines sentence can (in fact, sometimes must) be based on judge-found conduct not proved to a jury, *see Edwards v. United States*, 523 U.S. 511, 514-15 (1998); conduct not charged in the indictment, *see Witte v. United States*, 515 U.S. 389, 399-401 (1995); and conduct of which a defendant is acquitted but is established by a

5

preponderance of the evidence, *see United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per curium).  Moreover, the Court has explicitly held that courts are bound not only by the Guidelines, but by their policy statements and commentary as well.  *Stinson v. United States*, 508 U.S. 36, 42 (1993).

This court is required to follow these precedents.  *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations, citations omitted).  Indeed, every court of appeals recognizes that it is obliged to follow Supreme Court precedent, even when that precedent may appear to be undermined by subsequent Supreme Court decisions.  *See, e.g., Conover v. Aetna US Health Care, Inc.*, 320 F.3d 1076, 1079 n.2 (10th Cir. 2003) ("the Supreme Court instructed us to avoid concluding its more recent cases have, by implication, overruled an earlier precedent") (citation and internal quotation marks omitted).[1]

---

[1] *See also, e.g., Figueroa v. Rivera,* 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions"); *Perez v. Greiner,* 296 F.3d 123, 125 n.4 (2d Cir. 2002) ("where a Supreme Court precedent appears to have been reversed by implication, lower courts should continue to follow the case that directly controls, and leave to the Supreme Court the prerogative of overruling its own decisions) (citations and internal quotation marks and alterations omitted); *Sierra v. Romaine*, 347 F.3d 559, 575 (3d Cir. 2003) ("we should leave the overruling of Supreme Court precedents to that Court, even if we believe, or divine, that the Court should, or will, overrule them"); *Fisher v. King*, 232 F.3d 391, 397 (4th Cir. 2000) (the Supreme Court has "reject[ed] the proposition that other courts should ever conclude that the Supreme Court's recent cases have,

Furthermore, the courts of appeals have also unanimously held that the federal

Guidelines do not violate the rule of *Apprendi*.  *See, e.g., United States v. Mendez-*

*Zamora*, 296 F.3d 1013, 1020 (10th Cir. 2002).[2]  These decisions, too, bind the district

courts and the individual panels of the courts of appeals.  *See, e.g., Dubuc v. Johnson*,

---

by implication, overruled an earlier precedent"); *United States v. Rodriguez-Montelongo*, 263 F.3d 429, 434 (5th Cir. 2001) ("It is for this court to apply the law as it exists and for the Supreme Court to overrule its precedent if it so chooses."); *United States v. Talley*, 275 F.3d 560, 565 (6th Cir. 2001) ("[T]he Supreme Court has recently reminded us that lower courts should not overrule its decisions, even if later opinions cast doubt on such precedent. Rather, we are to leave to the Court whether to overrule its prior decisions.") (internal citation omitted); *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1018 (7th Cir. 2002) ("[W]e have no authority to overrule a Supreme Court decision no matter how dubious its reasoning strikes us, or even how out of touch with the Supreme Court's current thinking the decision seems"); *United States v. Maynie*, 257 F.3d 908, 918 (8th Cir. 2001) ("court of appeals should follow controlling Supreme Court precedent even though it may have been called into question indirectly"); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000) ("[S]peculation does not permit us to ignore controlling Supreme Court authority."); *Florida League of Prof'l. Lobbyists v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996) ("We are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court"); *U.S. Air Tour Ass'n v. F.A.A.*, 298 F.3d 997, 1012 n.8 (D.C. Cir. 2002) ("[T]he Supreme Court has made clear that the lower courts do not have the power to make th[e] determination" that Supreme Court decisions have been effectively overruled by subsequent decisions).

[2] *See also, e.g., United States v. Casas*, 356 F.3d 104, 128 (1st Cir. 2004); *United States v. Luciano*, 311 F.3d 146, 153 (2d Cir. 2002); *United States v. Parmelee*, 319 F.3d 583, 592 (3d Cir. 2003); *United States v. Cannady*, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); *United States v. Floyd*, 343 F.3d 363, 372 (5th Cir. 2003); *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir. 2002); *United States v. Merritt*, 361 F.3d 1005, 1015 (7th Cir. 2004); *United States v. Banks*, 340 F.3d 683, 684-65 (8th Cir. 2003); *United States v. Ochao*, 311 F.3d 1133, 1134-36 (9th Cir. 2002); *United States v. Ortiz*, 318 F.3d 1030, 1039 (11th Cir. 2003); *United States v. Pettigrew*, 346 F.3d 1139, 1147 n. 18 (D.C. Cir. 2003).

314 F.3d 1205, 1209 (10th Cir. 2003) ("Only an *en banc* panel may overrule a prior panel's decision.").

This court, thus, may not take it upon itself to cast aside the Guidelines system and the integrated sentencing process it mandates.

**B.    The Supreme Court Has Consistently Upheld the Constitutionality of Guidelines Sentences Based on Judge-Found Facts.**

As the Court is well aware, the Sentencing Reform Act of 1984, significantly altered the way in which district courts sentence persons convicted of federal crimes. Before the Act, Congress defined broad sentencing ranges, and then left it to individual judges to set sentences within those ranges on a case-by-case basis. *See Mistretta*, 488 U.S. at 364 (pre-Guidelines, "Congress delegated almost unfettered discretion to the sentencing judge to determine what the sentence should be within the customarily wide range"). With the Act, Congress delegated the authority to channel that judicial discretion to the Sentencing Commission, an "independent commission in the judicial branch of the United States." 28 U.S.C. § 991(a); *see also Mistretta*, 488 U.S. at 385. Congress charged the Commission with devising a system of sentencing ranges for categories of offenses and defendants according to various specified and unspecified factors. *See* 28 U.S.C. §§ 994(a)-(e).[3] In response, the Commission chose to create a system requiring a court to consider a defendant's "real" offense (i.e., his actual

---

[3] *See also* 28 U.S.C. § 991(b)(1)(B) (Commission directed to establish sentencing policies that "provide certainty and fairness in meeting the purposes of sentencing" and that "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct" while maintaining "sufficient flexibility to permit individualized sentences").

conduct), even if that conduct is not part of the charged offense of conviction. *See* USSG Ch. 1, Pt. A, intro. comment. 4(a) (2002) (now included as an editorial note following USSG § 1A1.1). The Commission also specified that such guidelines determinations were to be made within the statutory maximums established by Congress in the United States Code. *See* USSG § 5G1.1; *see also Witte*, 515 U.S. at 401-02 (noting that Guidelines channel the discretion of sentencing courts to take into account related uncharged misconduct in imposing sentence up to the statutory maximums, in a manner comparable to pre-Guidelines practice).

In *Mistretta*, 488 U.S. at 412, the Supreme Court upheld the constitutionality of both the federal Guidelines and the Sentencing Commission. In the face of nondelegation and separation of powers challenges, it held that "Congress neither delegated excessive legislative power [to the Commission] nor upset the constitutionally mandated balance of powers among the coordinate Branches" by placing the Commission within the judicial branch. *Id.* at 384-85, 412; *see also id.* at 412 (Constitution does not prohibit Congress "from calling upon the accumulated wisdom and experience of the Judicial Branch in creating policy on a matter uniquely within the ken of judges").[4]

---

[4] The courts of appeals have widely held that the Guidelines also comport with due process. *See, e.g., United States v. Govan*, 152 F.3d 1088, 1094 (9th Cir. 1998); *United States v. Piper,* 35 F.3d 611, 620 (1st Cir. 1994); *United States v. Spencer*, 25 F.3d 1105, 1112 (D.C. Cir. 1994); *United States v. Kerr*, 13 F.3d 203, 207 (7th Cir. 1993); *United States v. Guajardo*, 950 F.2d 203, 206 (5th Cir. 1991); *United States v. Delibac*, 925 F.2d 610, 614-15 (2d Cir. 1991).

With the overall constitutionality of the Guidelines established, the Court was then called upon to evaluate various of the Guidelines' real world applications.  Repeatedly, it upheld Guidelines sentences based on judge-found facts neither submitted to nor considered by a jury.  Indeed, in *Watts*, 519 U.S. at 153-54, the Court upheld an enhancement, under USSG § 2D1.1(b)(1), for possession of a gun in connection with a drug offense, even though the jury had acquitted the defendant of the firearms charge under 18 U.S.C. § 924(c).  The Court noted that USSG § 1B1.3 -– the "relevant conduct" rule -– "directs sentencing courts to consider all other related conduct, whether or not it resulted in a conviction."  519 U.S. at 153-54; *see also* USSG § 1B1.3, comment. (backg'd) ("conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range").  Applying that principle, the Court held that the sentencing court could consider the defendant's acquitted conduct (the firearms use) in determining his Guidelines sentencing range (for drug trafficking), so long as the acquitted conduct was proved by a preponderance of the evidence.  519 U.S. at 156-57; *see id.* at 154 ("sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction").

Other cases, too, have upheld Guidelines sentences based on related criminal conduct proved to a judge at sentencing, and not underlying a jury's verdict of guilt.  *See Witte*, 515 U.S. at 399-400 (judge may impose higher Guidelines sentence on defendant convicted of possessing marijuana based on judge's finding that offender also engaged in uncharged cocaine conspiracy); *Edwards*, 523 U.S. at 514-15 (even if jury convicted

10

defendant of cocaine-only conspiracy, judge may impose higher Guidelines sentence based on finding that defendant's conduct included crack-related activities); *United States v. Dunnigan*, 507 U.S. 87, 95-96 (1993) (court may impose Guidelines enhancement for perjury at trial when sentencing defendant for offense of conviction).

In so ruling, the Court clearly viewed the Guidelines enhancements not as "statutory maximums" (requiring proof to a jury beyond a reasonable doubt), but as rules channeling the discretion of judges within the congressionally set maximums in the United States Code. Indeed, the Court explicitly said as much in *Edwards*, which it notably cited with approval in *Apprendi*:

> Of course, petitioners' statutory and constitutional claims [that the court must base its Guidelines sentence exclusively on the cocaine-only facts found by the jury] would make a difference if it were possible to argue, say, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy. That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines.

*Edwards*, 523 U.S. at 515; *Apprendi*, 530 U.S. at 497 n.21; *see also Witte*, 515 U.S. at 399-400 (although Guidelines enhancement for uncharged conduct resulted in higher Guidelines range than otherwise would have applied, range "still falls within the scope of the legislatively authorized penalty" and is thus constitutionally permissible); *Mistretta*, 488 U.S. at 396 (Guidelines "do not . . . establish[] minimum and maximum penalties" for crimes).

The Court has thus analyzed the Guidelines as channeling judicial discretion within congressionally set statutory maximums, not as creating lower statutory maximums for the offenses defined by Congress. To upset that understanding now –- and either invalidate the Guidelines altogether, or hold that every of the myriad

11

Guidelines adjustments, enhancements and upward departures must be proved to a jury beyond a reasonable doubt -– would wreak havoc on the federal criminal justice system. In 2002 (the most recent year for which statistics are available), 64,366 federal defendants were sentenced under the Guidelines.  2002 Source Book of Federal Sentencing Statistics.  At this moment, thousands of cases (at every stage of the proceedings, from indictment, plea negotiation, trial, sentencing and appeal) would be affected by such a ruling.

Even beyond principles of stare decisis, this court should not place the system in such jeopardy and turn back the clock on years of sentencing reform -– especially where, as discussed below, this outcome is not mandated by *Blakely*.

**C.     The Commission-promulgated Federal Guidelines Operate  Differently From Washington State's Legislatively Enacted Guidelines.**

*Blakely* involved two Washington state statutes, one broad and one specific, that set forth various maximum penalties for criminal offenses.  The first prescribes maximum sentences depending on whether a crime is a Class A felony (life maximum), Class B (ten years), or Class C (five years).  Wash. Rev. Code § 9A.20.021(1).  The second statute categorizes individual crimes by "seriousness level" which, along with an offender's criminal history score, yields a "presumptive sentencing range," which is set forth in the state code in the form of a sentencing grid.  *See* Wash. Rev. Code § 9.94A.310(1) (Table 1) (now revised and codified at Wash. Rev. Code § 9.94A.510). The statute authorizes a court to impose a sentence above the presumptive range if it finds "substantial and compelling reasons justifying an exceptional sentence."  *Blakely*,

2002 WL 1402697 at * 2.  The statute includes an illustrative, non-exhaustive list of possible aggravating factors justifying an exceptional sentence.  *Id.*

Blakely pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm, a Class B felony.  The sentencing court did not sentence him to the presumptive range set by the statutory guidelines (49-53 months) for his crime, but imposed an "exceptional sentence" of 90 months based upon its finding that Blakely had acted with "deliberate cruelty" in committing the offense.  *Id.* at *3-4.  Applying the rule of *Apprendi* –- that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490 -- the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  2004 WL 1402697 at *4.  Because "deliberate cruelty" was neither proved to a jury nor admitted by Blakely in his plea, the Court ruled that the enhanced sentence was unconstitutional.  *Id.* at * 4, 6.

As in *Apprendi*, the legislative scheme in *Blakely* created two distinct statutory maximums.  In *Blakely*, one very broadly classified (and provided broad maximum ranges for) offenses as A, B, or C felonies, and the other provided crime-by-crime guidelines ranges, from which a judge could depart upward based on his or her own findings of aggravating factors.  *See* 2004 WL 1402697 at *2.

That is not how the federal system operates.  Congress has only created one set of statutory maximums for federal crimes.  The Guidelines operate within those maximums, *see* USSG § 5G1.1, and set forth a host of factors (the current Manual runs

13

some 491 pages) that courts are to consider, both in aggravation and mitigation, in individualizing a particular sentence.  These factors correspond to those that judges have always taken into account -– such as the manner in which a crime was committed, the nature of the victim, the defendant's role in the offense, whether he obstructed justice at trial, and whether he accepted responsibility for his actions -- in fashioning sentences. *Watts*, 519 U.S. at 152.[5]  As discussed above and as the Supreme Court has indicated, the federal Guidelines were never intended to operate on the same footing as the statutory maximums.  Indeed, that very assumption sits at the heart of the Guidelines: "they do not bind or regulate the primary conduct of the public or . . . establish[] minimum and maximum penalties for every crime.  They do no more than fetter the discretion of sentencing judges to do what they have done for generations -– impose sentences within the broad limits established by Congress."  *Mistretta*, 488 U.S. at 396.

Further, as *Mistretta* made clear, the Guidelines and the Sentencing Commission that promulgates them are constitutionally unique.  The Commission is not a legislative body but an "independent commission in the judicial branch of the United States."  28 U.S.C. § 991(a).  The federal Guidelines are not statutes but sentencing rules -– binding on sentencing courts by statute, *see Mistretta*, 488 U.S. at 367; *Stinson*, 508 U.S. at 42 (citing 18 U.S.C. § 3553(b)) -– but nevertheless the unique product of a special and limited delegation of authority.

---

[5] Indeed, in formulating the Guidelines, the Commission canvassed prior sentencing practice and attempted to identify and to assign weights to all the factors that judges traditionally used in determining appropriate sentences.  *See* United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 16-17 (1987).

*Mistretta* recognized that the substance of Congress' delegation to the Commission was essentially nonlegislative in character.  Like Congress' delegation of rulemaking authority to the judicial branch to prescribe rules of procedure and evidence, *see, e.g.*, 28 U.S.C. § 2072, the delegation to the Commission to make sentencing rules "simply leaves with the Judiciary what long has belonged to it."  488 U.S. at 396.  Or, put another way:

> Prior to the [Sentencing Reform] Act, the Judicial Branch, as an aggregate, decided precisely the questions assigned to the Commission: what sentence is appropriate to what criminal conduct under what circumstances.  It was the everyday business of judges . . . to evaluate and weigh the various aims of sentencing and to apply those aims to the individual cases that came before them.  The Sentencing Commission does no more than this, albeit basically through the methodology of sentencing guidelines, rather than entirely individualized sentencing determinations.

488 U.S. at 395; *id.* at 391 ("Commission's functions . . . are clearly attendant to a central element of the historically acknowledged mission of the Judicial Branch"); *see also United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000) ("the Commission's act of establishing sentencing ranges in the Guidelines is categorically different from the legislative act of setting a maximum penalty in a substantive criminal statute").

*Blakely*, of course, did not rest on the fact that the Washington guidelines scheme was legislatively enacted.  Nor, however, did it say that the source of the "statutory maximum" (whether congressional statute or commission guideline) for *Apprendi* purposes is immaterial.  Imposing *Apprendi*'s requirements only when the legislature has made a defendant's exposure to increased punishment contingent on findings of fact that the legislature itself specifies vindicates *Apprendi*'s animating constitutional values.  The Sixth Amendment right to trial by jury, and the due process right to insist on rigorous

proof to establish guilt of an offense, are fully protected when there must be a jury finding beyond a reasonable doubt on the facts that establish the legislatively prescribed maximum punishment to which a defendant is exposed.  Democratically-enacted statutes provide one of the most basic contracts between a citizen and his or her government.  Far more than the intricate, extensive, and many-layered determinations in the Guidelines manual, which are the products of the Commission's "significant discretion in formulating guidelines," *Mistretta*, 488 U.S. at 657, the United States Code tells the people of the United States what is and is not expected of them, and warns them of the ultimate consequences should they refuse to follow the rules.  As Justice Scalia said in *Apprendi*:

> I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years –- and that if, upon conviction, he gets anything less than that he may thank the mercy of a tenderhearted judge. . . Will there be disparities?  Of course.  But the criminal will never get *more* punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original); *see also Harris v. United States*, 536 U.S. 545, 562 (2002)  ("[s]ince sentencing ranges came into use, defendants have not been able to predict from the face of the indictment precisely what their sentence will be; the charged facts have simply made them aware of the 'heaviest punishment' they face if convicted.  Judges, in turn, have always considered uncharged 'aggravating circumstances' that, while increasing the defendant's punishment, have not swelled the penalty above what the law has provided for the acts charged.") (plurality opinion) (citations, internal quotation marks omitted).

In sum, the Supreme Court decisions before *Blakely* uniformly upheld the Guidelines system as written: a tightly integrated system of sentencing rules written for judges to apply based on their findings of fact.  *Blakely* explicitly declined to express a view on the Federal Sentencing Guidelines.  This court accordingly should continue to adhere to the law as it stands.

**WHEREFORE,** the United States respectfully requests that this Court sentence the defendant under the sentencing guidelines within the low end of the applicable guideline range of 262-327 months as set forth in the PSR.

.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

**FILED ELECTRONICALLY 7/23/04**
MARRON LEE
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 224-1533

I HEREBY CERTIFY that a true copy
of the foregoing pleading was mailed
to opposing counsel of record,
Benjamin A. Gonzales, this 23rd day
of July, 2004.

_____
MARRON LEE
Assistant U.S. Attorney

17